## CHOCTAW GRAIN CO. v. FIRST STATE BANK OF JET et al.

No. 23829.   Jan. 14, 1936.

W. H. Hills, for plaintiff in error.

Ira A. Hill and Guy D. Talbot, for defendants in error.

RILEY, J. Plaintiff in error was engaged in buying grain at various points in Oklahoma, one being at Jet, where it had a grain elevator and purchased grain from farmers and others. In so doing it employed one Townsend as its agent to buy grain at Jet, and furnished him with necessary blank checks with which to pay therefor, and authorized him to sign the checks for such purpose. While so employed, Townsend, with another, made out several checks in regular form purporting to be payable to farmers in that vicinity, and in payment for wheat, when in fact no wheat or other grain had been purchased. Townsend, or the other party with Townsend's knowledge, forged indorsements of the payees on the checks. Then Townsend gave the checks to his son, about twelve years old, and instructed him to take them to the bank and get the money, which was done. The defendant would place the money in an envelope and the boy took it to Townsend. The checks were drawn on an Oklahoma City bank, but when they came into the Oklahoma City bank, it did not pay them at once, and charge them to the account of plaintiff, but took them, together with all other checks of the grain company, each day to plaintiff, who, after examining the checks and comparing the amount thereof with the amount of grain appearing to have been purchased as shown by reports from the agents, if no discrepancy appeared, took up the checks by issuing its check, or checks for the total amount shown by the several checks and report. In this case false reports were sent in purporting to show bona fide purchases of grain. But later upon investigation plaintiff learned that the grain was not in the elevator, and that the indorsement of the payees of the checks here in controversy had been forged, and no grain had in fact been purchased as reported. Thereupon demand was made upon the Bank of Jet for payment upon its indorsements on the checks which carried with it the statement, "Previous indorsements guaranteed." Payment was refused and this suit was brought. Judgment was for defendant, and plaintiff appeals.

To the petition the defendant answered, alleging in substance that Townsend and his son were agents of the plaintiff, and because plaintiff placed Townsend in a position to cause a money loss to either the bank or the company, that the company should stand the loss.

The question presented is whether, under the facts, about which there is little dispute, the bank is liable upon its indorsement guaranteeing all previous indorsements.

Three decisions of this court, along with decisions of other courts, one being that of the Circuit Court of Appeals of the Tenth Federal District, are cited.

If the decisions of this court cited, viz., National Bank of Commerce v. Fish, 67 Okla. 102, 169 P. 1105; First Nat. Bank of Wichita Falls v. Guaranty State Bank of Marlow, 106 Okla. 85, 233 P. 183, and State Guaranty Bank of Okeene v. Doerfler, 99 Okla. 258, 226 P. 1054, are controlling, the judgment should be reversed.

In the National Bank of Commerce Case, supra, it is said:

"The relation between bank and depositor is that of debtor and creditor. When a depositor issues his check upon his bank

payable to payee or order, it is the duty of the bank to pay same to the person named in said check or upon his genuine indorsement, and a failure so to do is at the peril of the bank. (Citing cases)."

And:

"The reason for this rule is readily apparent. The depositor cannot know the signatures of the persons to whom he issues checks, and is not called upon nor expected to identify the payee or his signature; while, on the other hand, the bank may decline to pay until sufficient proof of the identification is furnished. It is, of course, impractical for banks at all times to require proof of the genuineness of the payee's indorsement, so a custom has arisen among banks that requires the bank cashing the check in the first instance to indorse same guaranteeing all prior indorsements, and relying upon this guaranty, the bank of deposit pays without further question, and in the event same has been paid upon a forged indorsement the bank of deposit has no right to charge same against the account of the depositor, but must look to its remedy upon the guaranty of the paying bank or other intermediate indorsers."

To the same effect is First Nat. Bank of Wichita Falls, supra, and State Guarantee Bank of Okeene, supra.

In Midland Savings & Loan Co. v. Tradesmen's Nat. Bank, 57 Fed. (2d) 686, it is held:

"Bank's payment of check on which depositor's, payee's or indorsee's signature is forged constitutes no payment as against depositor."

The cases from other jurisdictions cited by plaintiff in error are to the same general effect. But the rule announced in these is applicable only to cases where the checks are made payable to a person or his order. A different rule is applied to checks made payable to bearer, for in such cases title passes by delivery and no indorsement is necessary.

The checks in question were in form made payable to certain designated payees, or order, and unless excepted from the general rule applied in the Oklahoma cases mentioned above, that rule would govern.

Defendant in error contends that the checks were checks which in law were payable to bearer under the third subdivision of section 7679, C. O. S. 1921, which provides:

"The instrument is payable to bearer * * * when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable."

It is not clear from the record whether all the checks in question were made payable to existing persons. Most of them were shown to have been made payable to persons residing in the community of Jet, and who were known by the officers of the defendant bank. If any of them were made to fictitious or nonexisting persons, they were clearly checks payable to bearer under said section. But checks made payable to a person known to exist, or his order, are in some cases treated in law as being payable to bearer, such as where an agent or employee is authorized to issue checks for his principal, and knowingly and fraudulently issues checks payable to a person known to exist, but who has no knowledge of the checks or connection with the transaction and it is intended by the agent so issuing the check that such payees shall never receive the checks, such payees are in law fictitious persons, and such checks are subject to the same rule as if fictitious names were actually used. Phillips v. Mercantile Nat. Bank, 140 N. Y. 556, 23 L. R. A. 584.

In that case it was held:

"A bank is so far concluded by the acts of its cashier authorized to draw a check upon the bank's funds in drawing checks payable to fictitious payees or to customers whose names are used for fictitious purposes and indorsed by him upon the checks as to be estopped from denying the validity of such acts as against the bank upon which the checks are drawn and which has paid them in good faith."

There the unfaithful agent was the cashier of the National Bank of Sumter, S. C., and authorized to issue checks for the bank. He made the checks there involved to known customers of the bank, without their knowledge and without any intention to deliver the checks to the payees therein named, but with the intention to himself forge their indorsement thereon, did so and obtained the money thereon. In the opinion it is said:

"As it was, the payees were fictitious persons in the eye of the law, and the only real parties were the firms in New York, to whom the cashier sent them in such form as that they could draw the moneys upon them. The fictitiousness of the maker's direction to pay does not depend upon the identification of the name of the payee with some existent person, but upon the intention underlying the act of the maker in inserting the name. Where, as in this case, the intent of the act was, by the use of the names of some known persons, to throw directors and officers off their guard, such a use of names was merely an instrumen-

tality or a means which the cashier adopted, in the execution of his purpose to defraud the bank in an apparently legitimate exercise of his authority."

In Bartlett v. First Nat. Bank, 247 Ill. 490, 93 N. E. 337, where the manager of a grain company, engaged in the purchase of grain, as was the plaintiff in error in the instant case, was authorized by the company to draw drafts on the company in payment for grain purchased by the agent as in this case, drew drafts on the company without receiving the grain or the checks, as the checks in this case were, and were payable to real persons, as were some of the checks here involved, but with the intention that such persons should not have any interest in the drafts, as was the case here with the checks, and that the drafts should not be delivered to them, as was the intent as to the checks in this case, and forged the indorsement of the payees and misappropriated the proceeds, as was done here, it was held that such drafts were payable to fictitious persons, and therefore to bearer as against the grain company, and that the bank which paid them on the forged indorsements was not bound to refund the money to the grain company which had paid it to the bank.

To the same effect is American Hominy Co. v. National Bank, 294 Ill. 223, 128 N. E. 391; Mueller & Martin v. Liberty Ins. Bank, 187 Ky. 44, 218 S. W. 465; Snyder v. Corn Exchg. Nat. Bank, 221 Pa. 599; Norton v. City Bank & Trust Co., 294 Fed. 839, and Litchfield Shuttle Co. v. Cumberland Valley Nat. Bank, 134 Tenn. 379.

It will thus be seen that a different rule applies where the indorsement is forged by an agent having authority in the first instance to issue valid checks or bills, and where the forgery is by an agent having no such authority.

The distinction is clearly pointed out in U. S. Cold Storage Co. v. Central Mfg. Bk., 343 Ill. 503, 175 N. E. 825.

The cases cited from this court and the Midland Savings & Loan Co. Case, supra, are based upon the rule in the class of cases where the agent had no authority to issue checks.

The rule in the other class of cases controls in the instant case.

The judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY and PHELPS, JJ., concur.